# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1115

_____

United States of America,                        *
                                                 *
              Plaintiff - Appellee,              *
                                                 *    Appeal from the United States
       v.                                        *    District Court for the Eastern
                                                 *    District of Arkansas.
Leonard D'Andrea,                                *
                                                 *
              Defendant - Appellant.             *

_____

Submitted: October 18, 2006
Filed: January 10, 2007

_____

Before MELLOY, BENTON, and SHEPHERD, Circuit Judges.

_____

MELLOY, Circuit Judge.

Defendant Leonard D'Andrea pleaded guilty to one count of attempted enticement of a minor in violation of 18 U.S.C. § 2422(b) and one count of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4). Under the United States Sentencing Guidelines, the advisory sentencing range was seventy-eight to ninety-seven months. The government moved for an upward departure under U.S.S.G. § 4A1.3, arguing that Defendant's criminal history category substantially under represented the seriousness of his actual criminal history because an old but similar prior conviction was not used in the calculation of criminal history. The government also argued for an upward departure under U.S.S.G. § 5K2.21 based on similar,

uncharged conduct. The district court[1] found Defendant's prior offense to be too old to justify a departure based on section 4A1.3, but granted the government's motion for an upward departure under section 5K2.21 based on the uncharged conduct. In its request for an upward departure, the government recommended a sentence of 120 months on each count. The district court expressly found that Defendant was a sexual predator likely to re-offend and imposed concurrent sentences of 180 and 120 months on the enticement and child pornography counts, respectively. Defendant appeals the judgment of the district court, and we affirm.

I.      Background

In late 2004, an Arkansas State Police Officer working for the Internet Crimes Against Children Task Force posed as a thirteen-year-old girl from Little Rock in an Internet chat room.  Defendant, from his computer in Wyoming, initiated conversations with the undercover officer via the chat room and discussed engaging in sexual activity. Conversations continued into 2005. Eventually, Defendant stated that he had to be in Little Rock at a future date and made plans to meet and engage in sexual activity with the person he believed to be the thirteen-year-old girl. Before traveling to Little Rock, Defendant placed calls and talked to persons he believed to be the girl and her mother. Officers recorded these calls.

In early 2005, Defendant also initiated contact with another supposed thirteen-year-old girl from Little Rock. Again, the real person behind the screen persona was an undercover police officer. In chat room conversations with this second supposed girl, Defendant graphically proposed sexual activity. As with the first supposed girl, he took part in telephone conversations that were recorded. He eventually made plans with the second supposed girl to meet in Little Rock.

---

[1]The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas.

On more than one occasion, he invited the supposed girls to view his web camera, and he masturbated to ejaculation in front of the camera.

At the arranged time, Defendant arrived in Little Rock and traveled to the location of one of the arranged meetings. Officers arrested him, and he admitted that he intended to have sex with at least one of the girls that he thought he had met over the Internet. His luggage contained a nightgown, condoms, and lubricant. He also had a laptop computer with him in Little Rock. A search of the laptop showed that he had been communicating with other persons he believed to be underage girls and that these other persons' screen names were in his "friends list," which allowed him to detect when they were online. Other items found in the vehicle Defendant was driving at the time of arrest included digital cameras, web cameras, and camera equipment, including a tripod. The laptop had the software necessary to interface with the camera equipment, and the equipment was capable of being connected to the laptop. Equipment necessary for an Internet connection also was present. The laptop and the vehicle also contained maps and information about the locations where Defendant had arranged to meet the two supposed girls.

Officers then obtained a search warrant for a computer in Defendant's home in Wyoming. The contents of the Wyoming computer were encrypted. After breaking the encryption, officers discovered images of child pornography involving prepubescent minors and records of additional chats with persons Defendant believed to be underage. The computer also contained evidence of a discussion between Defendant and an adult in which Defendant spoke in graphic detail of a previous sexual encounter between himself and a twelve-year-old girl. The encounter had taken place when he was in his late twenties. The Wyoming computer also revealed that Defendant had assumed a separate screen name in a ruse to pose as a "pen pal" and friend to other minor girls so that the girls could arrange meetings with their "pen pal" without arousing suspicion from their parents.

During the course of plea negotiations, in a letter dated September 2, 2005, the government notified Defendant that it intended to seek an upward departure based on "the other chats," *i.e.*, the uncharged conduct revealed during the searches of the computers. Defendant and the government subsequently reached a plea agreement, and a pre-sentence report ("PSR") was prepared. The applicable statutory range of imprisonment was not less then five years nor more than thirty years on the enticement count, 18 U.S.C. § 2422(b), and not more than ten years on the child pornography count, 18 U.S.C. § 2252(b)(2). In PSR calculations, the Defendant's criminal history category was I. Defendant had been convicted in 1978 in municipal court in Oakland, California, for crimes against children. For that conviction, he was sentenced to 180 days' imprisonment and thirty-six months' probation. The 1978 conviction was not included in the calculation of his criminal history under the Guidelines. The PSR listed the total offense level as twenty-nine, but as per the plea agreement, Defendant was eligible for a possible, additional one-level reduction for acceptance of responsibility.

In the PSR, the probation office noted that the Government reserved the right to seek an upward departure under U.S.S.G. § 4A1.3 based on the under-representation of Defendant's criminal history and based on the fact that the prior conviction for crimes against children resulted in no criminal history points. The PSR did not make reference to an upward departure based on uncharged conduct. Neither the government nor Defendant objected to the PSR. On January 4, 2006, forty-eight hours before Defendant's sentencing hearing, the government filed a motion for an upward departure under U.S.S.G. § 5K2.21 based on similar but uncharged conduct.

At the sentencing hearing, Defendant objected to the government's motion, which he characterized as a newly argued basis for an upward departure. Defendant stated that because the government hadn't objected to the PSR, the government could not assert arguments not found in the PSR. Defendant also argued generally that he lacked sufficient notice of the new basis for the upward departure. The district court

-4-

invited Defendant to move for a continuance, stating, "[I]f you ask for a continuance, I will carefully consider giving you a continuance if you are in fact surprised." Defendant lodged his objections to the government's arguments, but repeatedly stated to the district court that he was not asking for a continuance.

The government proceeded to introduce evidence of the uncharged conduct. An investigator stated that searches of Defendant's computers revealed Defendant had carried on chat room discussions with many persons who appeared to be minors. The determination that the persons were minors was based on the Yahoo! profiles of their screen personas and based on the content of their discussions with Defendant. The government provided a detailed account of three such discussions—separate chat room discussions with girls who were seventeen, twelve, and fourteen years old.

The seventeen year-old was a high school student from New Orleans. In discussions with this girl, Defendant used his web cam to masturbate for the girl, talked graphically of sex with the girl, and discussed meeting her. He joked about the risk of getting caught and being concerned that if they were caught, "you'll get grounded, I'll go to jail." Defendant stated in the chat that he would be arriving in New Orleans on a certain date and staying for nine nights. A subpoena of records from the travel website Expedia and from Defendant's credit card company showed that Defendant had purchased an airplane ticket for the referenced travel days. It did not show specifically if the ticket was for a flight to New Orleans. The discussion revealed that Defendant did not meet the seventeen-year-old girl because her father discovered and stopped the communications.

The twelve-year-old was a girl from London who sent Defendant pictures of herself in her underwear. She talked about having a sexual threesome with Defendant and one of her friends and had graphic discussions with Defendant about sex. Defendant and the twelve-year-old discussed how they might meet. Defendant proposed creating a Yahoo! profile for an alter ego that the girl could use to convince

her parents she had a pen-pal in Wyoming who wanted her to visit. When the girl stated that her parents would want to talk to the pen-pal's parents, Defendant stated that he would pose as the parent. The government verified that the Yahoo! profile for the referenced alter ego actually existed and that the creator of the profile included pictures of a thirteen-year-old girl to complete the image of a teenage persona.

The fourteen-year-old was an eighth-grade girl from Newfoundland who sent nude pictures of herself to Defendant. Defendant used a web camera to masturbate for the girl, had graphic sexual discussions with her, sent her lingerie from Victoria's Secret, and discussed the pen-pal alter ego described above. The government verified the Victoria's Secret purchases through a search of Defendant's credit card records which showed a purchase close in time to Defendant's discussions with the girl about the lingerie.

The district court granted Defendant the additional, one-level reduction for acceptance of responsibility, bringing the final advisory Guidelines offense level down to twenty-eight for an advisory range of seventy-eight to ninety-seven months' imprisonment. The district court denied the government's motion for an upward departure under section 4A1.3 based on under-representative criminal history, but granted the motion under section 5K2.21 for uncharged conduct. The district court expressly stated that it believed Defendant posed a great risk of recidivism and that the extent and predatory nature of his online, solicitous activities justified sentences of 180 and 120 months—sentences well above the Guidelines range. The government does not appeal the district court's judgment as to the section 4A1.3 issue. Defendant appeals the upward departure and the overall reasonableness of the sentence imposed.

II.     Discussion

Defendant first argues that the government waived its right to argue for a departure on any basis other than U.S.S.G. § 4A1.3, which was the only basis for

departure cited in the PSR. Defendant also characterizes the government's actions in this case as a violation of the notice requirements of Rule 32 of the Federal Rules of Criminal Procedure. Defendant's arguments are without merit. In the letter to Defendant months before sentencing, the government provided notice that it intended to seek an upward departure based on uncharged conduct. Further, the district court invited Defendant to request a continuance if Defendant was, in fact, surprised or unprepared to address the government's motion. Defendant objected to the court's consideration of the additional grounds for departure, but at the time, did not consider the alleged notice concerns sufficient to justify a request for a continuance. Rather, he repeatedly and expressly refused to request a continuance. It is, therefore, disingenuous to now characterize the alleged failure of notice as having been so grave as to warrant reversal. See, e.g., United States v. Barrows, 996 F.2d 12, 14 (1st Cir. 1993) ("[T]he failure to invoke Rule 32(c)(3)(A) [1993] or request a continuance effectively waives the claim, absent a miscarriage of justice.")

Defendant next argues that the district court erred when it decided to grant an upward departure under section 5K2.21. We review the district court's decision to grant an upward departure for abuse of discretion. United States v. Donelson, 450 F.3d 768, 774 (8th Cir. 2006) ("A decision to depart upward on the basis of a permissible factor is reviewed for abuse of discretion.").

U.S.S.G. § 5K2.21 provides:

> The court may depart upward to reflect the actual seriousness of the offense based on conduct (1) underlying a charge dismissed as part of a plea agreement in the case, or underlying a potential charge not pursued in the case as part of a plea agreement or for any other reason; and (2) that did not enter into the determination of the applicable guideline range.

-7-

It is undisputed that the uncharged conduct considered by the district court in this case—the additional chat room discussions and activities that revealed an ongoing pattern of predatory activity by Defendant directed towards young girls or persons he believed to be young girls—"did not enter into the determination of the applicable guideline range." Id. Accordingly, the question we must address is whether the conduct fits under subsection (1) of section 5K2.21. We believe that it does. The following aspects of the uncharged conduct were almost identical to the conduct involved in the instant offense: characteristics of the victims; methods of communication; attempted contact and enticement; attempted persuasion of parents that their children would be visiting safe friends (through the use of phone calls or the creation of alter egos); graphic discussions of sex; and use of web cameras to perform sexual acts for the children to view. Further, Defendant graphically described an actual encounter with a twelve-year-old girl. This is all conduct that "underl[ies] a potential charge not pursued in the case . . . for any other reason." Id. The district court did not abuse its discretion in finding section 5K2.21 applicable on the facts of this case.

Defendant next argues that the overall sentence imposed was unreasonable. Our review for reasonableness is "akin to our traditional review for abuse of discretion," United States v. Shafer, 438 F.3d 1225, 1227 (8th Cir. 2006), and "[a] 'range of reasonableness' is within the district court's discretion." Id. (quoting United States v. Saenz, 428 F.3d 1159, 1165 (8th Cir. 2005)). In applying this standard, we generally will affirm unless "(1) a court fails to consider a relevant factor that should have received significant weight; (2) a court gives significant weight to an improper or irrelevant factor; or (3) a court considers only the appropriate factors but in weighing those factors commits a 'clear error of judgment.'" United States v. Haack, 403 F.3d 997, 1004 (8th Cir. 2005) (quoting Kern v. TXO Prod. Corp., 738 F.2d 968, 970 (8th Cir.1984)). The range of reasonableness is dictated by the circumstances in each case such that an extraordinary departure must be supported by "extraordinary circumstances." United States v. Dalton, 404 F.3d 1029, 1033 (8th Cir. 2005);

compare United States v. Kendall, 446 F.3d 782, 785 (8th Cir. 2006) (holding that an upward departure of 155% in a methamphetamine lab case was extraordinary and unreasonable because no extraordinary circumstances were present to justify the sentence) with United States v. Maurstad, 454 F.3d 787, 789-90 (8th Cir. 2006) (holding that a sentence of 120 months for conspiring to distribute methamphetamine was reasonable where the advisory range was 41 to 51 months because "extraordinary circumstances present here . . . justify the extraordinary variance") and United States v. Meyer, 452 F.3d 998, 1001 (8th Cir. 2006) (affirming as reasonable an "extraordinary" upward variance of 50% or 90 months where extraordinary circumstances supported the variance from an advisory Guidelines sentence of 180 months to an actual sentence of 270 months).

The sentence in the present case was an upward departure of 83 months or almost 100% above the top of the advisory Guidelines range of 78 to 97 months. We have characterized similar or smaller departures—upward and downward—as extraordinary or dramatic, whether addressed in relative terms as percentages or in absolute terms as months.[2] Meyer, 452 F.3d at 1001 (collecting cases in which we labeled 57%, 54%, and 50% downward variances extraordinary and holding that a 50% upward departure of 90 months was extraordinary and reasonable); Dalton, 404 F.3d at 1033 (holding that a 75% or 180 month downward departure was "extraordinary," unjustified, and therefore unreasonable). The present departure, then, clearly was an extraordinary departure and must be justified with extraordinary circumstances. We find, on the facts of the present case, that the district court

---

[2] In United States v. Maloney, 466 F.3d 663, 668-70 (8th Cir. 2006) , we noted the difficulty in defining "dramatic" variances solely in terms of percentages given the differences in scale that exist between offenders' advisory ranges. We concluded that percentages may be more useful in some cases than in others, and we held in Maloney that a 50% downward variance from 360 months to 180 months was unreasonable where there were disparity concerns and no "exceptional facts" to support the sentence. Id. at 668-69.

properly identified circumstances that justify the departure and did not abuse its discretion.

The district court was explicit in the reasons for its departure. The amount of material involved in this case was substantial and included numerous pornographic images involving minors as well as sexual chat room discussions with, and exhibitionist performances for, minors. Further, the Defendant employed sophisticated methods beyond the use of computers to entice minors and arrange meetings—he sent presents, created an alter ego, and attempted to assuage parents' concerns by posing as a parent of his online personas. The district court expressed concern that Defendant had "spent a great deal of effort and time in sex chatter on the Internet with people whom he believed to be young girls." Taken together, these activities convinced the district court that Defendant was a sexual predator likely to continue his illegal activity if released from prison following a lesser term of years. The district court placed considerable weight on the need "to protect the public from further crimes of the defendant," 18 U.S.C. § 3553(a)(2)(C), when it found that the 180- and 120-month concurrent sentences were necessary. The district court did not step outside the "range of reasonableness" in this case when it placed substantial weight on the need to protect the public. Rather, the extraordinary need to protect the public from Defendant's actions justify the sentence.

Defendant argues that his crimes were victimless, his family (including two daughters) will suffer if he is not allowed to support them, and his age (fifty-six) and his state of health militate against a long sentence. The claim that his crimes were victimless is specious at best. Although his crimes did not involve an individually identifiable victim, the inability to identify a child shown in pornographic images does not make the possession of child pornography a victimless crime. Regarding his other arguments, his family is not notably more vulnerable or uniquely situated among the families of federal convicts and is not likely to suffer more than other families whose major breadwinner is incarcerated. Similarly, his age, state of health, and medical

-10-

needs were not shown to be at all out of the ordinary in terms of federal prisoners. There is nothing in the sentencing transcript to suggest that the district court failed to take these arguments into account, and the district court was justified in rejecting these arguments.

The judgment of the district court is affirmed.

_____